**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

VIRGEN RODRIGUEZ-RIVERA, et al.

Plaintiffs

v.

MIGUEL PEREIRA-CASTILLO, et al.

Defendants

**Civil No. 09-1426**

**OPINION & ORDER**

On October 1, 2009, Co-defendants Zoraida Torres-De-Jesús ("Torres"), Gressel Acosta-Vélez ("Acosta") and Salinas Detention Center ("SDC")filed a Motion to Dismiss (Docket # 19) pursuant to FED. R. CIV. P. 12(b)(6). Hector M. Fontanez-Rivera ("Fontanez") and Jose Morales-Perez ("Morales")(Docket # 44)(collectively, "Defendants") , filed motions for joinder to the Motion to Dismiss on December 14, 2009 (Docket # 35) and January 22, 2010 (Docket # 44) respectively.  Plaintiffs have filed an Opposition (Docket # 21) to the original Motion to Dismiss, and a Renewed Opposition (Docket # 46) taking into account Fontanez and Morales' motions for joinder. After reviewing the pleadings and the applicable law, the Motion to Dismiss is hereby **GRANTED** in part and **DENIED** in part.

**Factual and Procedural Background**

The facts constituting the present action began on May 14, 2009, when minor J.C.S.R. was detained pending a hearing for an unknown offense at SDC, a juvenile correctional facility, administered and owned by the Commonwealth of Puerto Rico ("Commonwealth") Department of Correction and Rehabilitation's ("Puerto Rico Corrections") Administration of Juvenile Institutions ("Juvenile Corrections").[1] Dockets ## 1 at 8-9 & 46. Plaintiffs are Virgen

---

[1] The Managing Director of Juvenile Corrections submitted an affidavit on February 2, 2010, affirming that SDC is ". . . property of the Administration of Juvenile Institutions has been administered since it was acquired in June 2003 in all its aspects by the Administration of Juvenile Institutions." Docket # 47-2.

**CIVIL NO. 09-1426 (SEC)** **Page 2**

Rodriguez-Rivera ("Rodriguez"), individually and in representation of her minor son J.C.S.R., Luis Ramon-Jimenez-Delgado ("Jimenez"), and the Rodriguez-Jimenez Conjugal Partnership. They first allege that upon J.C.S.R.'s intake to SDC he was not properly interviewed or examined, and then assigned to Cell Block B. Docket # 1 at 9. The Complaint also avers that Cell Block B contained the general, juvenile, inmate population, and that J.C.S.R. should not have been assigned there.[2]

Furthermore, they allege that of the approximately fifteen (15) minors in Cell Block B, approximately four (4) required special supervision.[3] Id. More importantly, Plaintiffs allege that as result of the consent decree in U.S. v. the Commonwealth of Puerto Rico, Civ. No. 94-2080 (D.P.R. 1994), the ratio of minor detainees to corrections officers should never exceed eight (8) to one (1), significantly lower than the fifteen (15) to one (1) ration averred for SDC in the Complaint.

Plaintiffs also allege that the dormitory rooms in Cell Block B should have been locked, but were left open, despite the fact that allegedly "[i]t was well known for more than a year that Room 204 of Cell Block B was unlocked and was a security threat . . ." Id. At approximately 8:15 p.m. on May 15, 2008, when the lone guard, Officer Carlos Alvarez ("Alvarez"), was distributing snacks, four (4) other juveniles attacked J.C.S.R. with a shank thirty six (36) times, puncturing both of his lungs. The gist of the Complaint is that the attack occurred due to overcrowding and the fact that J.C.S.R.'s dormitory room was left unlocked. No reasons are proffered explaining Plaintiffs' theory why the doors to Cell Block 8 should have been locked at 8:15 p.m.

---

[2]The reasoning behind this averment is not included in the Complaint.

[3]The details of why they allegedly required special supervision, what type of supervision was required, or how this information is known, have not been plead.

After the attack, Plaintiffs allege unnamed guards made J.C.S.R. walk to the infirmary, and that he was not taken to Cristo Redentor Episcopalian Hospital ("Hospital") until approximately two (2) hours after the attack, despite his allegedly great anguish. J.C.S.R. was also allegedly transported in a private vehicle, and not an ambulance. Docket # 1 at 10. Rodriguez received notice of her son's injuries between 12:00 and 1:00 a.m. that same night.

At Hospital, J.C.S.R. underwent surgery, which involved the intubation of his lungs, and was released from Hospital on May 20, 2008. Id. Two days later he returned to Hospital, due to unmentioned medical complications, where he stayed as an inpatient for two more days, until May 26, 2008. Id. at 11.

As a result of the abovementioned facts, Plaintiffs have brought claims against Defendants pursuant to the Eighth and Fourteenth Amendments to the Constitution of the United States under 42 U.S.C.§ 1983 ("Section 1983"). Plaintiffs also bring causes of action under the Constitution and laws of the Commonwealth of Puerto Rico, in particular: Art. II, §§ 1, 7, and 12, the fifth clause of § 20 of Art. II, and Art. VI, §19 of the Constitution of the Commonwealth of Puerto Rico, and Article 1802 of the Civil Code of Puerto Rico. 31 L.P.R.A. §5126. Because Defendants' Motion to Dismiss focuses on only the federal causes of action, this Opinion & Order will not discuss the local law claims.

**Standard of Review**

It is well known that, "the general rules of pleading require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Gargano v. Liberty Int'l Underwriters, 572 F.3d 45, 49 (1st Cir. 2009) (FED. R. CIV. P. 8(a)(2)). The purpose of this is to give a defendant fair notice of the claims against him and their grounds. Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Therefore, "even under the liberal pleading standards of FED. R. CIV. P. 8, the Supreme Court has recently

**CIVIL NO. 09-1426 (SEC)**                                                                                                    **Page 4**

held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 127 S. Ct. at 1965).  Although complaints do not need detailed factual allegations, the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility  that a defendant has acted unlawfully."  Twombly, 127 S. Ct. At 1965; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

A plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. At 1965. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008). Of course, this Court need not give credence to ". . .conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (citing Ashcroft v. Igbal, 129 S. Ct. 1937, 1960, 173 L. Ed. 2d 868 (2009)); see also  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at1949.

**Applicable Law & Analysis**

*Eleventh Amendment as to SDC*

The Eleventh Amendment to the United States Constitution provides:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States

**CIVIL NO. 09-1426 (SEC)**                                                                                          Page 5

by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. Am. XI.[4]

Although the Eleventh Amendment literally seems to apply only to suits against a State by citizens of another State, the Supreme Court has consistently extended the scope of this Amendment to suits by citizens against their own State. See Board of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 362 (2001); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Hans v. Louisiana, 134 U.S. 1, 15 (1890). The Commonwealth enjoys the same Eleventh Amendment immunities as a State. See Jusino-Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 37 (1st Cir. 2000); Negron-Gaztambide v. Hernandez-Torres, 145 F.3d 410 (1st Cir. 1998). Thus, the Eleventh Amendment bar extends to governmental instrumentalities which are an arm or *alter ego* of the State. See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d. 1034, 1036 (1st Cir. 1987); Pennhurst State Sch. Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Colon-Andino v. Toledo-Davila, 634 F.Supp. 220, 230 (D.P.R. 2009).

This Court will take judicial notice that Puerto Rico Corrections, and by extension Juvenile Corrections, constitute an arm or *alter ego* of the Commonwealth.[5] Therefore, both Puerto Rico Corrections and Juvenile Corrections are dependencies of the Commonwealth, and protected by immunity. Furthermore, Defendants have proffered an affidavit affirming that SDC was run by and belonged to Juvenile Corrections at the time of the incident, and continues to be run by said agency. Docket # 47-2. Therefore, the applicability of Eleventh Amendment immunity appears pellucid.[6]

---

[4] The Supreme Court has established that the Eleventh Amendment protection primarily furthers two goals: the protection of a state's treasury and the protection of its dignitary interest of not being haled into federal court. Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003) (citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743 (2002)).

[5] This fact is not contested by Defendants. Docket # 21 at 2.

[6] This particular point of the motion to dismiss involves an issue of jurisdiction, so examining the abovementioned document does not automatically convert the motion to dismiss into a motion for summary judgment, because to the extent this Court ". . . engages in jurisdictional fact-finding, is free to test the truthfulness of the plaintiff's allegations." Dynamic

**CIVIL NO. 09-1426 (SEC)**                                                                                           **Page 6**

In light of the above, all claims against SDC are **DISMISSED WITH PREJUDICE**. Despite this ruling, should evidence appear that SDC's ownership or operation is private, and that the affidavit is false, this Court will reopen the issue. However, at present it appears to be an open and shut matter.

. *Section 1983 Claims by Rodriguez, Jimenez, and the Rodriguez-Jimenez Conjugal Partnership*

Suits under Section 1983 must be brought by the individual affected by the allegedly unconstitutional acts or omissions. Nunez Gonzalez v. Vazquez Garced, 389 F. Supp.2d 214, 218 (D.P.R. 2005). As a result, family members cannot bring a pendant Section 1983 claim for their own suffering, "unless the constitutionally defective conduct or omission was directed at the family relationship." Id.; see also Robles-Vazquez v. Garcia, 110 F.3d 204, 206 (1st Cir. 1997). In this case, no specific acts by Defendants are alleged to have affected J.C.S.R., Rodriguez, and Jimenez's family relationship.  True, Plaintiffs do allege that SDC officials did not contact Rodriguez until various hours after the attack, but this can hardly be construed as a constitutional violation under the Fourteenth Amendment, as will be discussed below. Nor can this Court find a takings issue because, Rodriguez and Jimenez ". . . were forced to make at least two trips daily between their home in Yabucoa and the hospital." Docket # 21 at 6.  In light of this, all Section 1983 claims by Rodriguez, Jimenez, and the Rodriguez-Jimenez Conjugal Partnership are **DISMISSED WITH PREJUDICE**.

*Eighth Amendment*

The United States Supreme Court has stated that the Eighth Amendment, applicable to the states through the Fourteenth Amendment, "prohibits the infliction of cruel and unusual punishments on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296-97 (1991)(emphasis added); see also Martinez-Rivera v. Ramos, 498 F.3d 3, 9 (1st Cir. 2007). The

---

Image Technologies, Inc. v. U.S., 221 F. 3d 34, 38 (1st Cir. 2000).

**CIVIL NO. 09-1426 (SEC)**                                                                 **Page 7**

amendment also covers "deprivations that were not specifically part of the sentence but were suffered during imprisonment." Seiter, 502 U.S. at 297. However, the Eighth Amendment only comes into play after there has been a formal adjudication of guilt, through a criminal prosecution, in accordance with due process of law. Martínez-Rivera, 498 F. 3d at 9 (stating that "because there had been no formal adjudication of guilt against [Plaintiffs] at the time of the alleged constitutional deprivation, the Eighth Amendment is inapplicable and any claim brought on that theory was properly dismissed."); see also City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983) (affirming the necessity of " . . .a formal adjudication of guilt in accordance with due process of law.") (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n.40, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)).

Furthermore, "only the unnecessary and wanton infliction of pain implicates the Eight Amendment." Seiter, 502 U.S. at 297. None of these circumstances exist at present, as least with regards to those Defendants alleged to have acted under the color of state law. Plaintiff has not alleged that he was both convicted and imprisoned, after a formal process of adjudication, nor does he claim to have been subjected to unnecessary and wanton infliction of pain as punishment. On the contrary, this case involves a temporary detention prior to a juvenile proceeding. The attack was perpetrated by other juvenile detainees, and, while conceivably negligent, nothing indicates either SDC's staff's alleged short delay in taking J.C.S.R. to Hospital, or their asking him to walk to the infirmary, were wanton infliction of pain or deliberate indifference to medical needs. Id. Therefore, the Eight Amendment claims must be **DISMISSED WITH PREJUDICE**.

.    *Fourteenth Amendment Due Process*

Substantive due process claims may be pled under two (2) different theories: 1) by proving that the state's conduct "shocks the conscience" or 2) by demonstrating the "deprivation

**CIVIL NO. 09-1426 (SEC)**                                                                                          **Page 8**

of an identified liberty or property interest protected by the Fourteenth Amendment." Brown v. Hot, Sexy & Safer Prods., 68 F.3d 525, 531 (1st Cir. 1995). Fourteenth Amendment substantive due process claims generally are reviewed under the 'shocks the conscience' test to the alleged state action. Maldonado v. Fontanes, 568 F.3d 263, 272 (1st Cir. 2009); see also Espinoza v. Sabol, 558 F.3d 83, 87 (1st Cir. 2009). Under this theory, "[t]he substantive component of the Due Process Clause is violated by executive action 'when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)). Moreover, " . . . the Supreme Court has been firm in its reluctance to expand the doctrine of substantive due process. . . because of this resistance toward expanding the reach of substantive due process that the official conduct 'most likely to rise to the conscience-shocking level' is 'conduct intended to injure in some way unjustifiable by any government interest.'" Maldonado v. Fontanes, 568 F.3d 263, 273 (1st Cir. 2009)(quoting Chavez v. Martinez, 538 U.S. 760, 766 (2003)).

Furthermore, qualified immunity must also be assessed, and "analyzing the pleadings under Iqbal . . . [the Complaint must] . . . allege a sufficient connection between [Defendants] and the alleged conscience-shocking behavior." Maldonado, 568 F.3d at 273. "A government official who himself inflicts truly outrageous, uncivilized, and intolerable harm on a person or his property may be liable. . ." for a substantive due process violation. Id. at 274 (1st Cir. 2009). In sum, under the shocks the conscience due process standard, the Complaint must allege, as to each defendant, that he or she was personally involved in conscious shocking behavior,[5] described as "'arbitrary and capricious,' or [running] counter to 'the concept of ordered liberty,' or [. . .] which, in context, appear[s] 'shocking or violative of universal

---

[5]This Case has problems with how it is plead, which can be construed as a series of "bare assertions" insufficient to survive the pleadings stage. Id.

standards of decency.'" Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622 (1st Cir. 2000)(citing Brown, 68 F.3d at 531.

This is a very restrictive standard as pertains to the actual behavior of the government officials, but, as mentioned above, there is another path for plaintiffs if they ". . . demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment." Cruz-Erazo, 212 F.3d at 622. Therefore, in order to examine the pleadings and the particular case at hand, it is important to sketch the contours of substantive due process, especially as applied to prisoners and others similarly confined in government custody. This starts by pointing out ". . .the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986). Importantly, "[a]s a general proposition, a state's failure to protect an individual against private violence does not constitute a violation of due process." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (invoking Deshaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 202 (1989).

Notwithstanding the above, substantive due process does ". . . require[] the State to provide involuntarily committed mental patients with such services as are necessary to ensure their 'reasonable safety' from themselves and others." Deshaney, 489 U.S. at 199 (citing Youngberg v. Romeo, 457 U.S. 307, 314-315 (1982)); see also Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Cote v. Maloney, 152 Fed. Appx. 6, 7 (1st Cir. 2005). Such a duty flows from the 'historic liberty interest' in personal security enshrined in the Due Process Clause. Youngberg, 457 U.S. at 315. The reasoning is that by limiting an individual's ability to provide his own protection, or "act on his own behalf," the State imposes an affirmative duty on itself. Deshaney, 489 U.S. at 200. Deshaney surmised that Youngberg and Revere came to the limited conclusion ". . . that when the State takes a person into its

custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Id. Therefore, it is only logical to assume this also applies to juvenile detainees awaiting hearing.

In the context of Section 1983, as applied to the government actors in the present action, this Court must ask, ". . . if, at the time of the alleged violation, 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Brown, 68 F.3d at 531 (citing Anderson v. Creighton, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)). Given Daniels established that merely negligent acts do not give rise to due process claims, but that Youngberg and Deshaney affirm the right to reasonable safety for those in government custody, this Court must decide if Defendants knowingly deprived J.C.S.R. of his right to reasonable safety while at SDC.

Before fully discussing the matter of J.C.S.R.'s substantive rights to safe detention conditions, this Court notes that it does not find that any of the behavior described in the Complaint passes the "shocks the conscience" test. The filtering and assignment of J.C.S.R. to the cell block in question certainly does not fit under this analysis, because beyond mentioning the U.S. v. the Commonwealth of Puerto Rico consent decree, Plaintiffs have not alleged that SDC officials had any reason to believe, besides the alleged ratio of guards to juveniles, that Cell Block B was particularly dangerous. The same applies to leaving Cell Block B's doors unlocked, especially at an hour of the evening (around 8:00 p.m.), when it is entirely conceivable to believe that the juveniles would not have been required to be in lock-down. Furthermore, the attack, while very disturbing, was perpetrated by other detainees, not SDC officials, and the alleged actions of asking J.C.S.R. to walk to the infirmary after the attack, and the short delay in taking J.C.S.R. to Hospital can hardly been construed as shocking or violative of universal standards of decency. However, given J.C.S.R.'s substantive due process liberty

interest in safe confinement conditions and adequate medical care while under SDC's custody, this Court's analysis cannot stop with the "shocks the conscience" test.

*Failure to Promptly Obtain Qualified Medical Treatment*

Plaintiffs allege that various Defendants, among them Torres, Acosta, Fontanez, and Morales, had a duty to provide J.C.S.R. with access to qualified medical treatment within a reasonable time after his injuries, but failed to do so by making him: 1) walk to the infirmary and 2) waiting approximately two hours before bringing him to Hospital. Docket # 1 at 16.

Failure to provide medical care to incarcerated individuals can constitute a violation of the Eighth Amendment. Rivera v. Alvarado, 240 F. Supp. 2d 136, 142 (D.P.R. 2003); see also Estelle v. Gamble, 429 U.S. 97 (1976). Therefore, in light of Youngberg's reasoning, the same should also extend to pretrial juvenile detainees under the substantive Due Process Clause. The Eighth Amendment uses a two-pronged test requiring a serious deprivation of medical care, and for the defendant to have been deliberately indifferent to the failure to provide care. Id. (stating "(1) the alleged deprivation must be objectively sufficiently serious and, (2) the defendants must have a culpable state of mind, meaning that the defendant was deliberately indifferent to the inmate's health or safety."). The courts have established that the protections offered to pretrial detainees and mental health patients should be no weaker than those offered by the Eighth Amendment. Youngberg, 457 U.S. at 315-316. Accordingly, if the Complaint pleads plausible facts that SDC officials were knowingly indifferent to J.C.S.R.'s pain, or other serious medical needs, the claim is sufficient to survive the pleadings stage for this cause of action.

The facts of the Complaint do not support such a conclusion. To the contrary, they show that J.C.S.R. was taken to the infirmary almost immediately, and then to Hospital in the hours following the attack. While the delay in bringing J.C.S.R. to Hospital appears to be possibly longer than the highest standards of care might require, it would be speculative to conclude it

**CIVIL NO. 09-1426 (SEC)** Page 12

equated to any deliberate denial of medical care, rather, at most it points towards negligence, which is not covered by Section 1983.

Here, the medical indifference allegations, even when seen in the light most favorable to Plaintiffs, cannot lead to a conclusion that Defendants were deliberately, or knowingly, indifferent to J.C.S.R.'s medical needs after the attack. This would be entirely different if the allegations suggested that SDC officials intentionally left J.C.S.R. to suffer, or otherwise acted to deny him care. Moreover, the Complaint does not include any non-conclusory pleadings that the injuries appeared life threatening, or that J.C.S.R. has continued to suffer because of the short, alleged, delay in bringing him to Hospital. There he received treatment, which Plaintiffs allege was negligent under Article 1802, but Hospital's standard of care is beyond the ambit of Section 1983.

Even when given all possible positive inferences, Plaintiffs' allegations of deprivation of medical treatment are little "more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]," which is what Iqbal proscribed, when it stated "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 129 S. Ct. at 1949.[6] This Court finds that Plaintiffs failed to plead facts sufficient to establish a valid claim of deprivation of medical treatment under the Due Process Clause. Therefore, said claim is hereby **DISMISSED WITH PREJUDICE** against all Defendants.

*Failure to Protect*

What remains to consider are the allegations of dangerous conditions in Cell Block B. One case analyzing a similar issue, albeit under the Eighth Amendment, found that a Section 1983 claim for unsafe prison conditions requires showing conditions that present a substantial risk for harm, and deliberate indifference to said conditions on the part of the defendants. In order to satisfy the above, Defendants would have had to have received notice or possessed

**CIVIL NO. 09-1426 (SEC)**                                                                 Page 13

knowledge of circumstances, within their control, that should have made them aware that actions were needed to ensure the safety of the juvenile detainees, but, despite awareness of the situation, they were still deliberately indifferent to them. Heisler v. Kralik, 981 F.Supp. 830, 836-837 (S.D.N.Y. 1997) (elaborating the standard created in Farmer v. Brennan, 511 U.S. 825, 829 (1994)). That is, the allegations must show that SDC officials knew of and disregarded substantial risks to J.C.S.R.'s safety. Id.

There are three factual allegations underlying the claim for unconstitutional deprivation of J.C.S.R.: 1) there were 15 minors in Cell Block B and only one (1) guard; 2) the door to Room 204 was left unlocked; 3) SDC employees improperly screened J.C.S.R. upon his arrival at the facility, and endangered him by placing him in a cell block with other inmates in Cell Block B. Docket # 1 at 11-12. These will be analyzed for sufficiency under Twombly and Iqbal as to Torres, Acosta, Fontanez, Morales, and the Complaint as a whole.

*Sufficiency of the Pleadings & Qualified Immunity*

According to the Complaint, both Torres and Acosta worked as social workers at SDC. Plaintiffs allege that they were entrusted with screening and admitting J.C.S.R. Docket # 1 at 7, 9, & 11. Plaintiffs allege that Defendants, including Torres and Acosta, knew of the allegedly dangerous staffing situation and that Room 204 in Cell Block B was left unlocked, and that this presented a danger to J.C.S.R. Id. at 12. Plaintiffs have not alleged any specific instructions were violated or other cognizable facts as to why J.C.S.R. should have not been assigned to Cell Block B.[6] They allege four (4) of the other juveniles in Cell Block B had "special needs" but

---

[6] General Relevant Facts as pled in the Complaint (Docket # 1 at 9):

> 28. The Plaintiff J.C.S.R. was not properly interviewed and examined upon arrival at the Salinas Detention Center on May 14, 2008.
> 29. Plaintiff J.C.S.R. was assigned to Cell Block B of the Salinas Detention Center.
> 30. Cell Block B includes a dormitory area in which detainees are housed, and a common area.
> 31. One of the dormitory rooms in Cell Block B, Room 204, should have been locked

**CIVIL NO. 09-1426 (SEC)**                                                                                                                  **Page 14**

do not specify why SDC staff should have known this might have created a dangerous situation. Furthermore, nothing in the Complaint suggests that either Torres or Acosta, as Social Workers, had anything to do with determining the conditions of supervision within the holding cells. Again, no theory has been given as to why leaving Room 204 unlocked created a substantial risk for harm, nor why Torres and Acosta should have known about the alleged dangers. The Complaint also alleges that Torres and Acosta were indifferent to proper procedures, but does not even cite which procedures were omitted, or which others should have been followed.

After reviewing the Complaint, this Court must conclude that Defendants have not alleged specific facts suggesting Torres or Acosta had any actual knowledge of a substantial security risk to J.C.S.R. in particular. The Complaint makes various allegations as to general safety conditions, but none are substantiated, or explained as to the individual defendants, especially SDC's social workers. As to Torres and Acosta, Plaintiffs have only proffered formulaic and conclusory "defendant-unlawfully-harmed-me-accusation[s]." Iqbal, 129 S.Ct. at 1949. Therefore, all claims against them must be **DISMISSED WITH PREJUDICE** for failing to state a plausible claim for relief.

---

but was not.
32. It was well known for more than a year that Room 204 of Cell Block B was unlocked and was a security threat, which threat could readily be removed by the simple expedient of installing a proper lock.
33. According to the decree in U.S. v. the Commonwealth of Puerto Rico, Civil Action No. 94-2080-CC (1994), there should be one corrections officer for every eight minors on the day and evening shift, and more if any of the minors require special supervision.
34. Upon information and belief, on May 15, 2008, there were approximately 15 minors in Cell Block B, and approximately four of them required special supervision.
35. Upon information and belief, on May 15, 2008, Corrections Officer Carlos Alvarez was the sole officer present In Cell Block B.
36. On May 15, 2009 rather than keeping minor Plaintiff J.C.S.R. separate from the rest of the population, he was placed with the rest of the inmate population.
37. At approximately 8:15 P.M. of May 15, 2008, while Officer Carlos Alvarez was distributing snacks, detained minors J.A.C.P.; L.O.; J.M. and L.A. viciously and without provocation attacked minor Plaintiff J.C.S.R. in room 204 and stabbed him at least thirty-six times with a shank.

**CIVIL NO. 09-1426 (SEC)**                                                                 Page 15

With regards to Fontanez, Director of Security at Puerto Rico Corrections, and Morales, who Plaintiffs allege acted as head of security at SDC, the analysis must be different because they are implicated via having exercised supervisory roles within Puerto Rico Corrections. There is no *respondeant superior* liability under Section 1983, and supervisors must be found liable on the basis of their own acts or omissions. That is, "a supervisory official may be held liable for the behavior of his subordinates only if '(1) the behavior of [his] subordinates results in a constitutional violation, and (2) the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" Pineda v. Toorney, 533 F.3d 50, 54 (1st Cir. 2008) (citing Lipsett v. University of Puerto Rico, 864 F.3d 881, 902 (1st Cir. 1988)).

This Court has taken judicial notice of the consent decree and enforcement actions currently underway in U.S. v. the Commonwealth of Puerto Rico. Plaintiffs also allege that Defendants knew "that there existed a pervasive risk that detainees housed in Cell Block B introduced and harbored weapons." Id. at 13. There are also allegations regarding the risk presented by leaving Room 204 unlocked, but no specific allegations as to a particularly dangerous situation for J.C.S.R.. The presence of the consent decree itself cannot create automatic liability for all SDC employees. The Complaint must have pled facts allowing for a reasonable inference that Defendants were indifferent to the allegedly dangerous conditions in Cell Block B.

In light of this, this Court concludes that Morales, as head of security of SDC, would have plausibly had information regarding the consent decree, and number of guards needed, as well as the conditions regarding the door in Cell Block B. His job also would have imposed upon him a positive duty to remedy any immediate dangers. Thus, failing to act upon

**CIVIL NO. 09-1426 (SEC)**                                                                                          **Page 16**

knowledge of the staffing problem, or the security situation inside Cell Block B, could constitute knowing indifference to serious security threats to J.C.S.R.'s 'reasonable safety' expectations.  This Court cannot, at present, conclude what Morales knew or did not know.  However, if the facts of the complaint are correct, then it is plausible that Morales would have been responsible for the safety situation in Cell Block B, and, should have known about the overcrowding and problems with the door. Therefore, the Motion to Dismiss as to the Section 1983 claims against him regarding the security situation must be **DENIED**.

Fontanez's agency-wide position, when compared to Morales'rol at SDC, was farther removed, and no facts in the Complaint connect him directly with the daily administration of SDC, nor do they suggest how he would have personally known about the situation in Cell Block B.  Because the consent decree could not itself alert him to the present situation, this Court finds that the facts in their entirety do not plead a plausible claim for relief against Fontanez under Section 1983.  The Motion to Dismiss is thus **GRANTED** at to Fontanez.

Along this same line of reasoning, this Court notes that the claims against Miguel Pereira Castillo ("Pereira"), Secretary of Puerto Rico Corrections, and Evaristo Cruz Morales ("Cruz"), Director of Classification for Puerto Rico Corrections appear to fall into the same category as those against Fontanez. However, a ruling cannot be made on said point at present, and will be deferred until such time that it is brought before this Court.

*Civil Contempt*

To enforce a consent decree a party should recur to the court that entered the consent decree, in instances, such as the present, where said court has retained jurisdiction.  In general, "[i]f the plaintiff (the party obtaining the writ) believes that the defendant (the enjoined party) is failing to comply with the decree's mandate, the plaintiff moves the court to issue an order to show cause why the defendant should not be adjudged in civil contempt and sanctioned."

**CIVIL NO. 09-1426 (SEC)**                                                            Page 17

Reynolds v. Roberts, 207 F.3d 1288, 1298 (11th Cir. 2000); 13-65 Moore's Federal Practice - Civil § 65.81. If satisfied that the plaintiff sketches a situation of non-compliance, the defendant is asked to show cause, and a hearing is then held to determine compliance. Id.

This Court understands that the civil contempt power for U.S. v. the Commonwealth of Puerto Rico, Civ. No. 94-2080, resides with the judge who presided said case, because it is he or she who retains personal jurisdiction over the defendant in a particular to enforce the consent decree. Puerto Rico Corrections and the United States Department of Justice remain active in the implementation of the same. Therefore, this Court finds that any enforcement of the consent decree should be pursued under the aforementioned case. Therefore, this issue is **DISMISSED WITHOUT PREJUDICE**. Another issue is whether Plaintiffs have standing to seek enforcement of said consent decree, but that is not properly before this Court, and will not be addressed.

**Conclusion**

In light of the above, all claims against SDC are **DISMISSED WITH PREJUDICE**, as are those against TORRES, ACOSTA, and FONTANEZ. Plaintiffs' Section 1983 claims under the Eighth Amendment, and for failure to promptly obtain qualified medical treatment are also **DISMISSED WITH PREJUDICE**, along with Rodriguez, Jimenez, and the Rodriguez-Jimezez Conjugal Partnership's individual claims under Section 1983. The motion for civil contempt is also **DENIED** and **DISMISSED WITHOUT PREJUDICE**.

**So Ordered.**

In San Juan, Puerto Rico, this 8th day of March, 2010.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge